**Arden HAMRICK, Appellee,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellant.**

**No. 81–1539.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1982.

Decided April 8, 1982.

Joseph S. Friedman, Social Security Division, Dept. of Health and Human Services, Baltimore, Md. (Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Wayne A. Rich, Jr., U. S. Atty., Marye L. Wright, Asst. U. S. Atty., Charleston, W. Va., on brief), for appellant.

Franklin W. Kern, Charleston, W. Va. (Hazel A. Straub, Charleston, W. Va., on brief) for appellee.

Before WINTER, Chief Judge, and PHILLIPS and SPROUSE, Circuit Judges.

PER CURIAM:

The question presented by this appeal is whether substantial evidence supports the Secretary's determination that the claimant was not totally disabled by pneumoconiosis on or before June 30, 1973. We hold that substantial evidence does support this determination and that the district court's contrary judgment must be reversed.

I.

Arden Hamrick applied for benefits under the Federal Coal Mine Health and Safety Act[1] on November 29, 1972. After full administrative consideration, his application was denied, but on appeal, the district court remanded for reconsideration including any additional evidence adduced by the parties. On remand the Secretary again denied the claim and in a second appeal the district court reversed the Secretary's determination and ordered the payment of benefits to claimant. The crucial date for the determination of whether claimant is totally disabled by pneumoconiosis is June 30, 1973.[2]

We turn to the record and the findings of the administrative law judge which became those of the Secretary. Claimant, a 68 year-old man, was employed in coal mines for well over ten years. He last worked in a coal mine on August 8, 1973.

The medical evidence of claimant's condition included X-rays, pulmonary function tests, and the report of an examining physician. An X-ray taken on January 16, 1973 was originally read as positive for pneumoconiosis but was reread as negative by two "B" readers. An X-ray taken on March 18, 1975 was also read as positive by one reader but reread as negative by two "B" readers. The third X-ray, taken in 1978, was read as positive.

A pulmonary function study was conducted on June 3, 1975. Claimant's height was seventy inches, his $FEV_1$ was 2.6, and his MVV 103 L/min. These values did not meet the regulatory criteria for establishing a chronic respiratory ailment, although a second pulmonary function test conducted in March of 1978 did indicate a respiratory disability. Claimant introduced a physician's report of an examination conducted in March of 1978. The examining physician reported that he thought claimant had pneumoconiosis which might qualify plaintiff for benefits under the Act.

Claimant testified that he experienced shortness of breath and difficulty in walking. He claimed that during the last two years in which he worked in the coal mines

---

1. 30 U.S.C. §§ 901–945 (1971 & Supp.1979).

2. The Secretary of Health and Human Services, defendant here, has jurisdiction only over those claims that were filed on or before June 30, 1973, and that show disability due to pneumoconiosis as of that date. 30 U.S.C. §§ 924(a)(1), (b) (Supp.1979).

he was short of breath and weak, and that he would have been unable to continue working as long as he had without the assistance of his co-workers. His testimony regarding his physical symptoms and the assistance he received from others while working was corroborated by six affidavits submitted by his fellow employees.

However, claimant testified that he also assisted others on the job, and that he was able to fulfill his regular duties as a cutting machine operator. A labor relations manager reported that claimant's work was satisfactory. Claimant's earnings record showed that he had earned more in the third quarter of 1973 than at any previous time.

The Secretary concluded that the evidence did not establish the existence of disabling pneumoconiosis on June 30, 1973. Alternatively, the Secretary concluded, even if claimant had established a prima facie case, claimant had continued to work at his usual employment during the period for which he was claiming benefits. Accordingly, the Secretary denied the claim for disability benefits.

## II.

To establish entitlement to black lung benefits under the Act, a claimant must demonstrate by a preponderance of the evidence that "he is a coal miner, that he is totally disabled due to pneumoconiosis, and that his pneumoconiosis arose out of employment in the Nation's coal mines . . . ." 20 C.F.R. § 410.410(b) (1981); *Sharpless v. Califano*, 585 F.2d 664, 667 (4 Cir. 1978). A claimant who fails to establish disability due to medically-demonstrable pneumoconiosis, but who has worked in the mines for fifteen or more years, is entitled to a rebuttable presumption that he is disabled by pneumoconiosis if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment. 30 U.S.C. § 921(c)(4).

By regulation, the Secretary has set forth three basic methods by which a claimant employed for fifteen or more years in the coal mines can show entitlement to benefits: by X-ray findings;[3] pulmonary function studies;[4] or other relevant evidence, including medical history, the report of an examining physician, and appropriate lay evidence, which demonstrates the existence of a totally disabling respiratory or pulmonary impairment.[5]

In this case, the Secretary found that Hamrick failed to meet any of these three tests for establishing entitlement and, consequently, denied the claim for benefits. The decision of the Secretary as to a claim for benefits under the Act will be upheld so long as it is supported by substantial evidence and is not arbitrary or an abuse of discretion. *Prater v. Harris*, 620 F.2d 1074, 1084 (4 Cir. 1980).

The Secretary's determination that the X-ray evidence does not establish the existence of disabling pneumoconiosis is supported by substantial evidence. Only one X-ray was consistently read as positive for pneumoconiosis, and this X-ray, taken in 1978, is less probative of plaintiff's condition in 1973 than are the earlier X-rays because pneumoconiosis is a progressive disease. *See Prater v. Harris*, 620 F.2d at 1082–1084. The earlier X-rays were read as negative by the more highly-skilled "B" readers, and the Secretary's determination to resolve the conflicting X-ray evidence in favor of the reports of the "B" readers is binding on this court. *Sharpless v. Califano*, 585 F.2d at 667.

A pulmonary function study conducted in 1978 met the regulatory criteria for establishing disabling pneumoconiosis. However, since the pulmonary study conducted in 1973 is more probative of Hamrick's condition in 1973, and since the earlier study did not show disabling pneumoconio-

---

**3.** 20 C.F.R. §§ 410.414(a)(1), 410.428(a)(1), 410.490(b)(1)(i) (1981).

**4.** 20 C.F.R. §§ 410.426(b), 410.490(b)(1)(ii) (1981).

**5.** 20 C.F.R. §§ 410.414(c), 410.426(d) (1981).

sis, substantial evidence supports the Secretary's finding that plaintiff did not prove his entitlement by virtue of the pulmonary function tests.

■ Nonetheless, the medical evidence, even if not conclusive, constitutes "other relevant evidence" which, along with other evidence of disability, may establish an entitlement to benefits pursuant to the third method described above. 20 C.F.R. § 410.-414(c); *see Prater v. Harris*, 620 F.2d at 1085. The evidence in support of Hamrick's claim, then, includes the positive X-ray readings, the pulmonary function report of 1978, the report of his examining physician, his testimony as to his symptomology, and the six affidavits submitted by his co-workers.

■ On the other hand, both X-rays taken nearest to the cut-off date of June 1973 were also read as negative for pneumoconiosis. An unequivocal diagnosis by an examining physician familiar with the claimant's medical history is entitled to great weight. *Caraway v. Califano*, 623 F.2d 7, 11 (6 Cir. 1980). But in this case the physician's diagnosis was tentative even as to claimant's condition in 1978, and did not purport to describe his medical condition as of 1973. Thus, a fair assessment of the medical evidence is that the most timely evidence is conflicting, and the only uncontradicted evidence suggests that Hamrick may have become disabled at a time remote from the period for which he is claiming benefits.

The lay evidence is timely and therefore probative, but it is also conflicting. Hamrick and numerous of his colleagues claimed that he had difficulty in performing his work at the time he claims he was disabled. But Hamrick himself admitted that he was able to perform his normal occupation satisfactorily, and his work record supports this admission. The Secretary noted that the affidavits omitted the fact, admitted by claimant, that it was a "common practice" for the miners to assist each other. Therefore, the Secretary discredited, in part, the assertions in the affidavits that Hamrick was disabled because he was aided by his co-workers.

■ In sum, the evidence is both conflicting and substantial on either side of the question of whether Hamrick was totally disabled on the crucial date. On such a record, we cannot substitute our judgment for that of the Secretary. Our review is at an end when we conclude, as we must, there is substantial evidence to support the Secretary's conclusion that Hamrick was not totally disabled by pneumoconiosis in June of 1973.

■ There is another ground to support the Secretary's denial of benefits. The Secretary's decision to deny benefits is clearly supported by the uncontradicted evidence that Hamrick continued to work at his normal occupation as a cutting machine operator until August of 1973. The Act specifically provides that a miner engaged in coal mine employment is not entitled to benefits while so engaged. 30 U.S.C. § 923(d). Therefore, even if Hamrick has established a prima facie case of entitlement, the claim should be denied if the evidence shows that he was doing his usual coal mine work during the period of alleged disability. 20 C.F.R. § 410.490(c)(1).

■ Of course, evidence of continued work would not be sufficient to rebut a prima facie case if it shows only that claimant's work performance was sporadic or poor, relative to his past work record, or if the evidence shows marginal earnings during the period of alleged disability. *See Hanna v. Califano*, 579 F.2d 67, 69 (10 Cir. 1978). But that is not this case. On the contrary, there is substantial evidence that claimant's work performance was satisfactory up until the time he retired, in August of 1973. Moreover, company records show that his earnings were even higher than normal during the period for which he is now claiming benefits. Therefore, substantial evidence supports the Secretary's finding that, even if Hamrick had otherwise established entitlement to benefits, his claim was successfully rebutted by the evidence that he continued to work at his usual coal mine employment after June 1973 at a level inconsistent with total disability.

Since, therefore, the Secretary's denial of benefits is supported by substantial evidence, his decision must be affirmed. The contrary decision of the district court is

REVERSED.