894 F.2d 401
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Samuel T. ELKINS, Petitioner,
v.
ELRO COAL CORPORATION; Office of Workers Compensation
Program, Respondents.
 No. 88-3659.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 10, 1989.
Decided: Jan. 9, 1990.
 
 Margaret Tuttle Schenck (Client Centered Legal Services of Southwest Virginia, Inc., on brief), for petitioner.
 Mark Elliott Solomons (Mark J. Botti, Arter & Hadden, on brief); Marta Kusic (Jerry G. Thorn, Acting Solicitor of Labor; Donald S. Shire, Associate Solicitor for Black Lung Benefits; Michael J. Denny, Counsel for Appellate Litigation; Robert E. Kirschman, Jr., U.S. Department of Labor, Office of the Solicitor, on brief), for respondents.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Samuel T. Elkins originally filed for black lung benefits pursuant to 30 U.S.C. Secs. 901 et seq. on January 14, 1974. Although Elkins' claim was initially denied, he was awarded benefits on July 9, 1980. Thereafter, the responsible operator, Elro Coal Corporation ("Operator") filed a controversion and requested a hearing which was held on May 20, 1985, before Administrative Law Judge ("ALJ") Roy N. LaRocca. On December 16, 1985, the ALJ denied benefits ("ALJ I").
 
 
 2
 In the ALJ I decision, Elkins was credited with over 39 years of coal mine employment. However, Judge LaRocca held that the evidence presented was insufficient to invoke the interim presumption found at 20 C.F.R. Sec. 727.203(a) and that Elkins had not established eligibility under Subpart D of Part 410 of the regulations, 20 C.F.R. Secs. 410.401-410.476. The ALJ did not apply the presumption found at 20 C.F.R. Sec. 410.490 which covers claims made prior to July 1973.
 
 
 3
 On August 21, 1986, the Benefits Review Board ("BRB") remanded the case to the ALJ to apply the Fourth Circuit's decision in Stapleton v. Westmoreland Coal Co., 785 F.2d 424 (4th Cir.1986), which held that a single piece of qualifying evidence was sufficient to invoke the Sec. 727.203(a) presumption.[1]
 
 
 4
 ALJ Melvin Warshaw issued a second ALJ decision ("ALJ II") on December 16, 1986. Judge Warshaw found that the evidence was sufficient, under the Stapleton standard of proof, to invoke the presumption pursuant to 20 C.F.R. Sec. 727.203(a)(1) and Sec. 727.203(a)(3).[2] However, Judge Warshaw denied benefits because he found the presumption rebutted pursuant to Sec. 727.203(b)(2) as the evidence showed that Elkins was able to perform his usual coal mine or comparable and gainful employment. The ALJ did not apply the Sec. 410.490 presumption.
 
 
 5
 The BRB affirmed the ALJ II decision on October 31, 1988. Although it pointed out the ALJ's mistake in finding rebuttal under Sec. 727.203(b)(2), it held that the evidence supported rebuttal under Sec. 727.203(b)(3).[3] Therefore, it concluded that the mistake was harmless. In a footnote, the BRB refused to consider Elkins' appeal of his claim for benefits under Sec. 410.490, specifically declining to follow this Court's decision in Broyles v. Director, 824 F.2d 327 (4th Cir.1987), aff'd sub nom. Pittston Coal Group v. Sebben, 109 S.Ct. 414 (1988).[4]
 
 
 6
 Elkins contends that the ALJ erred in finding rebuttal under 20 C.F.R. Sec. 727.203(b)(3) because (1) it is not supported by substantial evidence and (2) application of rebuttal under Sec. 727.203(b)(3) violates 30 U.S.C. Sec. 902(f)(2) because it is more restrictive than the rebuttal criteria under Sec. 410.490. However, we do not reach the rebuttal issues presented on appeal because we find that the ALJ I decision which denied benefits to Elkins for his failure to show sufficient evidence to invoke the interim presumption under Sec. 727.203(a) is supported by substantial evidence. Without invocation of the presumption, the rebuttal issues do not arise.
 
 
 7
 Elkins does not specifically dispute Judge LaRocca's determinations in ALJ I with respect to invocation under Secs. 727.203(a)(1)-(3). Furthermore, our review of the record and the ALJ I decision demonstrates that Judge LaRocca carefully evaluated and weighed all relevant medical evidence. He credited negative x-ray readings over positive x-ray readings because they were read by the specially proficient "B" readers and were more recent. The two pulmonary function studies failed to meet invocation values and the overwhelming weight of the blood gas studies failed to establish invocation. Substantial evidence supports each of those conclusions.
 
 
 8
 On the other hand, Elkins does specifically contend that it was error not to have found the presumption invoked pursuant to 20 C.F.R. Sec. 727.203(a)(4). We now address the particular complaints raised by Elkins on appeal.
 
 
 9
 Section 727.203(a)(4) permits a presumption of total disability due to pneumoconiosis for a coal miner who worked at least ten years in coal mine employment if:
 
 
 10
 (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment.
 
 
 11
 20 C.F.R. Sec. 727.203(a)(4).
 
 
 12
 To invoke the presumption under Sec. 727.203(a)(4), Elkins must prove all necessary facts by a "preponderance of the evidence." See Mullins Coal Co. v. Director, OWCP, 484 U.S. 135 (1987) (rejecting a prior Fourth Circuit decision allowing a single item of qualifying evidence automatically to satisfy requirements for presumptions under Sec. 727.203(a)(1)).
 
 
 13
 The ALJ credited the medical opinions of Drs. Abernathy, O'Neill, and Dahhan over that of Dr. Smiddy.
 
 
 14
 Elkins contends that the ALJ erred in analyzing his claim under Sec. 727.203(a)(4) because the ALJ failed to consider "all other medical evidence" including both qualifying and non-qualifying x-rays, ventilatory and blood gas studies. That claim is without merit. Those specific types of medical evidence were evaluated under the first three subsections of Sec. 727.203(a) and thus should not be again weighed under Sec. 727.203(a)(4). See Stapleton v. Westmoreland Coal Co., 785 F.2d 424, 427 (4th Cir.1986) (en banc) (per curiam), rev'd on other grounds, Mullins Coal Co. v. Director, OWCP, 484 U.S. 135 (1987) (when Sec. 727.203(a)(4) says "other medical evidence" it means "medical evidence other than x-rays, ventilatory studies, and blood gas studies").
 
 
 15
 Next Elkins claims that the ALJ erred in weighing the opinion of Dr. Smiddy. Dr. Smiddy had concluded that:
 
 
 16
 [c]onsidering this patient's totality of objective information including his X-ray, ABG, physical findings, work history, it would be my opinion that this patient has sufficient pneumoconiosis, that if he were a younger age his pneumoconiosis would preclude his performing the type of physical activity required for underground mining.
 
 
 17
 Report of Dr. Smiddy, July 18, 1984.
 
 
 18
 The opinions of two other examining doctors, Drs. Abernathy[5] and Dahhan,[6] concluded that there was no disability from a pulmonary standpoint. In his first report, Dr. Abernathy stated that a chest x-ray revealed pneumoconiosis, but that Elkins was not compromised functionally by its presence. Dr. O'Neill, a third doctor who had not examined Elkins, reviewed a number of tests and studies and concluded that pneumoconiosis might be present, but "no evidence of respiratory functional impairment or respiratory disability" existed.[7]
 
 
 19
 The ALJ found the reports of Drs. Abernathy, Dahhan, and O'Neill, which "reject any pulmonary or ventilatory impairment," the most probative medical evaluations of record. The ALJ specifically discussed the credibility of Dr. Smiddy's report:
 
 
 20
 The conclusion of Dr. Smiddy is not felt to be particularly well reasoned. There were minimal findings made by him on physical examination. Although breath sounds were said to be reduced, there is no other indication or report of abnormal breath sounds. There was no use of accessory muscles of respiration, and no jugular venous distention, increased AP diameter, nail bed spooning, clubbing, cyanosis, or peripheral edema. Although Dr. Smiddy interpreted the blood gas study as showing hypoxemia, other pulmonary specialists, Dr. Dahhan and Dr. O'Neill, have concluded that the blood gas studies have been normal. In fact, Dr. Smiddy stated that a p02 of 75 at the age of 75 was "certainly not unusual." He also reached his conclusions without the benefit of pulmonary function study. Furthermore, Dr. Smiddy failed to consider to what extent the claimant's symptoms are attributable to his heart condition, although he indicates recognition of its significance by ruling out pulmonary function testing as unsafe.
 
 
 21
 Elkins focuses on the ALJ's statement, in isolation, that "[t]here were minimal findings made ... on physical examination" and criticizes the ALJ for ignoring the thoroughness of Dr. Smiddy's examination and evaluation of Elkins. The rest of the ALJ's reasoning, however, demonstrates that it did not reject Dr. Smiddy's report on the sole positive finding on physical examination that breath sounds were reduced.
 
 
 22
 Elkins also argues that Dr. Smiddy's failure to give him a pulmonary function test is irrelevant because a doctor's report based upon a physical examination may not be discounted simply because the doctor did not perform all available tests at his disposal. Fuller v. Gibraltar Coal Corp., 6 BLR 1-1291, 1-1294 (1984). However, the ALJ did not discredit Dr. Smiddy's report because he failed to give a ventilatory test, but noted that he did not have the benefit of one. The ALJ found that the results of a ventilatory test given by another doctor which showed no pulmonary disability should be believed.
 
 
 23
 Finally, Elkins criticizes the ALJ II decision for discounting Dr. Smiddy's opinion because it was "greatly influenced" by Elkins' advanced age. However, that was not the only basis for choosing the other doctors' reports over that of Dr. Smiddy. The ALJ II decision incorporated the findings of the ALJ I decision discussed above.
 
 
 24
 Because at least four reports from two unquestionably qualified doctors, Dr. Abernathy and Dr. Dahhan, concluded that there was no pulmonary disability, the ALJ, even if Dr. Smiddy's report was completely credited, would have had to choose which to believe. That is a judgment call that this Court is not free to reverse. See Hamrick v. Schweiker, 679 F.2d 1078, 1081-82 (4th Cir.1982).
 
 
 25
 In short, the ALJ's conclusion that Elkins did not suffer from a totally disabling respiratory or pulmonary impairment was supported by substantial evidence. Therefore, the original ALJ decision[8] finding that Elkins had not presented sufficient evidence to invoke the presumption under Sec. 727.203(a) is
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The United States Supreme Court later reversed this Court's decision in Stapleton. See Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 108 S.Ct. 427 (1987) (to invoke presumption claimant must prove by a preponderance of the evidence all necessary facts under Sec. 727.203(a))
 
 
 [2]
 The relevant portion of this interim presumption states:
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... if one of the following medical requirements is met:
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis ...
 * * *
 (3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than the values specified in the following table: ....
 
 
 [20]
 C.F.R. Sec. 727.203(a) (table omitted)
 
 
 [3]
 The pertinent part of the rebuttal provision is:
 (b) Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment....
 
 
 [20]
 C.F.R. Sec. 727.203(b)
 
 
 [4]
 The BRB chose to follow instead its en banc decision in Whiteman v. Boyle Land & Fuel Coal Co., 11 BLR 1-99 (1988)
 
 
 [5]
 Reports of Dr. Abernathy dated May 13, 1980, and January 9, 1981
 
 
 [6]
 Reports of Dr. Dahhan dated August 1984 and April 24, 1985
 
 
 [7]
 We reject Elkins' contention that Dr. O'Neill's report should be given no weight at all because he had not examined Elkins. A non-examining physician may make conclusions on the basis of medical reports prepared by other physicians if those reports address the matters upon which the non-examining physician's conclusions are based. Cf. Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 125 (4th Cir.1984)
 
 
 [8]
 We note that the findings in ALJ I were never reviewed by the BRB because of the intervening Stapleton decision upon which the BRB remanded the case. Given that Stapleton was wrongly decided, that the ALJ I decision was clearly and comprehensively written and that this case is now in its fifteenth year, we independently reviewed the ALJ I findings for substantial evidence without the initial benefit of the BRB's evaluation. We find no error in adopting such a procedure under the circumstances presented here as the standards of review, i.e., substantial evidence, are the same
 We also observe that the same evidence is insufficient to invoke the presumption under 20 C.F.R. Sec. 410.490.